IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTOINE JERMAINE WALLACE          *

      v.                                *          Civil No. RDB-11-1540

UNITED STATES OF AMERICA          *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

UNITED STATES OF AMERICA          *

      v.                                *          Criminal No. RDB-08-0201

ANTOINE JERMAINE WALLACE          *

## MEMORANDUM OPINION

The *pro se* petitioner Antoine Jermaine Wallace ("Petitioner") has filed a Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate" or "Motion") pursuant to 28 U.S.C. § 2255.  (ECF No. 68).  Petitioner challenges his 216-month sentence primarily on the grounds that this Court improperly identified him as a career criminal offender and that he received ineffective assistance from counsel such that his Sixth Amendment rights were violated. Petitioner also makes a series of allegations that implicate his right to due process and a fair trial.

Subsequent to filing the Motion to Vacate, Petitioner filed four additional motions. Specifically, he filed a Motion for Disclosure (ECF No. 70) requesting exhibits, jury instructions and witness lists; a Motion to Instruct the Court Clerk (ECF No. 75) to provide him with a docket sheet for his case; a Motion Notifying the Court of the Government's Failure to Answer his Motion to Vacate (ECF No. 81); and a Motion for a Copy of the Government's Response and Enlargement of Time for Defendant's Reply (ECF No. 82).

Upon reviewing the motions and the Government's opposition thereto, this Court finds that no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons stated below,

Petitioner's Motion to Vacate is DENIED; his Motion for Disclosure is DENIED; his Motion to Instruct the Court Clerk is DENIED; his Motion Notifying the Court is MOOT; and his Motion for Extension is MOOT.

<u>BACKGROUND</u>

On July 9, 2008, a jury found Petitioner guilty of one count of bank robbery in violation of 18 U.S.C. § 2113(a).  On August 22, 2008, this Court sentenced Petitioner to a 216-month (18-year) prison term, followed by three years of supervised release.  (Judgment, ECF No. 45.)

The facts of this case are taken from Petitioner's appeal of his conviction to the United States Court of Appeals for the Fourth Circuit.  *See* Government's Resp., Ex. 4, ECF No. 80-4. On January 4, 2008, Petitioner entered a Bank of America at 201 Bento Avenue in Linthicum, Maryland.  *Id.* at 2.  After several minutes, Petitioner approached a teller, Leslie Neighoff ("Neighoff"), and demanded that she fill a white plastic bag he was carrying with money.  *Id.* Neighoff pushed the silent alarm and filled the plastic bag with cash.  *Id.* at 3.  Petitioner noticed a nearby stack of money, containing a hidden dye pack, and commanded Neighoff to place it in the plastic bag.  Neighoff complied with Petitioner's order.  *Id.*

Petitioner escaped the bank with the bag of money, which activated the dye pack.  *Id.* Approximately thirty minutes after the incident, a canine officer found Petitioner hiding in a water drain.  *Id.*  Petitioner's hands and clothing were stained by dye, which an FBI chemist confirmed to be from the hidden dye pack.  *Id.*

On April 24, 2008, a grand jury indicted Petitioner of one count of bank robbery, in violation of 18 U.S.C. § 2113(a).  Indictment, ECF No. 1.  A three-day jury trial took place from July 7 to July 9, 2008.  On July 9, 2008, the jury found Petitioner guilty of the crime of bank robbery.   On August 25, 2008, this Court sentenced Petitioner to a 216-month term of

incarceration with three years of supervised release.  (ECF No. 45.)  Petitioner appealed this judgment, and the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's conviction and sentence.  *See United States v. Wallace*, No. 09-4227, 360 F. App'x 441 (4th Cir. 2010).

On June 6, 2011, Petitioner filed the pending Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 68.)  In his Motion, Petitioner makes a multitude of claims.  Petitioner argues that he received constitutionally ineffective assistance of counsel from both his trial and appellate counsel.[1]  *See* Pet'r's Supp. Mot. at 28-39.  Petitioner also alleges that this Court erred when it classified him as a career criminal offender.  *See id.* at 3-11.  Petitioner further claims that this Court should have suppressed Neighoff's line-up identification of Petitioner, as well as statements Petitioner made around the time of his arrest.  *See id.* at 20-26.  Petitioner accuses the Government of altering the bank surveillance video used in his trial and improperly showing it to the jury.  *See id.* at 43-44.  Petitioner also accuses this Court and the Government for acting in concert together in order to convince the jury to convict him.  *See id.* at 42-43.  Finally, Petitioner states that this Court erred in its instructions to the jury.  *See id.* at 45.  Upon review, this Court finds that Petitioner failed to file the pending Motion in a timely fashion. Even if he had timely filed, this Court finds that he received reasonable assistance from counsel and suffered no prejudice, and that his remaining claims either have no merit or are procedurally barred.  For these reasons, Petitioner's Motion to Vacate is DENIED.

<u>ANALYSIS</u>

Petitioner's Motion to Vacate fails both for procedural reasons and on the merits.  This Court will first address the Motion's timeliness under the statute of limitations set forth in

---

[1] Petitioner was represented by different appointed attorneys at the trial and appellate stages of his case. *See* Notice of Attorney Appearance: Meghan S. Skelton, ECF No. 13; Order Appointing New Counsel for Appeal, ECF No. 47.

section 2255(f) of Title 28.  Notwithstanding the untimeliness of the Motion, this Court will then

address the merits of Petitioner's claims.

**I.   <u>Timeliness of Petitioner's Motion to Vacate</u>**

    A.  *Standard of Review*

    Petitioner did not file the pending Motion before the one-year deadline; therefore, his

Motion fails to meet the statute of limitations requirement set forth in 28 U.S.C. § 2255(f).  The

language of section 2255(f) reads:

> (f) A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have discovered the exercise of due diligence.

28 U.S.C. § 2255(f).  In this case, judgment of conviction became final when the ninety-day time

period for filing a petition of certiorari seeking review of the appellate court judgment expired.

*See Clay v. United States*, 537 U.S. 522, 525 (2003); *United States v. Morris*, 429 F.3d 65, 70

(4th Cir. 2005).  The ninety-day period to request review begins when the Court of Appeals

issues its mandate in a case.  *See United States v. Torres*, 211 F.3d 836, 837 (4th Cir. 2000).  The

Court of Appeals entered its mandate for Petitioner's appeal on February 2, 2010, making May 3,

2010, the deadline to file a petition for certiorari.  ECF No. 63.  Since Petitioner did not file a

petition for certiorari, the judgment became final on May 3, 2010.  Thus, the deadline to file a

Motion to Vacate was May 3, 2011, pursuant to 28 U.S.C. § 2255(f)(1).  Petitioner did not submit this Motion to Vacate until June 6, 2011, ECF No. 68, and therefore failed to file within the statute of limitations.

> B. *This Court's actions did not toll the period for Petitioner's Motion under section 2255(f)(2).*

Petitioner argues that the starting date for the tolling period falls under 28 U.S.C. § 2255(f)(2), rather than the date of final judgment under section 2255(f)(1).  Section 2255(f)(2) provides for tolling in cases where the government deprives a petitioner of his or her constitutional or statutory rights in a manner that prevents him or her from filing a motion under section 2255.  *See* 28 U.S.C. § 2255(f)(2).  Petitioner claims that this Court should have ruled on his Motion to Appoint Counsel, ECF No. 65, which he filed on June 18, 2010, before the statute of limitations could begin to toll, and that failure to appoint counsel constituted a government action that prevented his filing of his Motion to Vacate.  *See* Pet'r's Mot. at 2.  Petitioner's argument fails, because an open Motion to Appoint Counsel does not affect the one-year time period within which Petitioner had to file the pending Motion.  Here, the governing federal statute gave this Court the discretion to appoint counsel if it deemed it to be "in the interests of justice."[2]  Furthermore, Petitioner had no constitutional right to receive such counsel.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today." (citing *Johnson v. Avery*, 393 U.S. 483, 488 (1969))).  Petitioner cannot point to any "action in violation of the Constitution or laws of the United States" committed by this Court that prohibited him from filing his Motion to Vacate.  28 U.S.C. §

---

[2]     *See* 18 U.S.C. § 3006A(2)(B).  "Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section . . . 2255 of title 28."  *Id.*

2255(f)(2).  Accordingly, Petitioner fails to show that section 2255(f)(2) governs the applicable tolling period for his Motion.

Petitioner also claims that an error in this Court's ruling on his Motion to Appoint Counsel tolled the statutory period to file his Motion to Vacate.  *See* Pet'r's Mot. at 4.  In its order denying Petitioner's Motion to Appoint Counsel, this Court mistakenly wrote that the Fourth Circuit's issued its mandate on Petitioner's appeal on February 2, 2011, rather than February 2, 2010.  Order Den. Mot. to Appoint Counsel, ECF No. 66.  Petitioner argues that, because of this Court's error, the tolling period to file his Motion to Vacate should begin on February 2, 2011.  *See* Pet'r's Mot. at 4.

Petitioner's argument wholly lacks merit.  Section 2255(f)(1) states that the statute of limitations begins to toll for one year following the date on which judgment in a case becomes final.  As detailed above, judgment in Petitioner's case became final on May 3, 2010, which was ninety days after the Court of Appeals issued its mandate on his appeal.  Petitioner was sent a certified copy of both the appellate court judgment, *see* Judgment of the United States Court of Appeals, ECF No. 63, and appellate court mandate, *see* Mandate of the United States Court of Appeals, ECF No. 64, affirming his conviction.  A mere typographical error in this Court's denial of Petitioner's Motion to Appoint Counsel, almost a year after judgment became final, does not change the fact that Petitioner knew of the relevant dates that applied to the statute of limitations to file his Motion to Vacate.

C. *Conduct by prison officials did not toll the period for Petitioner's Motion under section 2255(f)(2).*

Petitioner asserts that the limitations period should be tolled because prison officials encumbered his ability to submit a Motion to Vacate.  *See* Pet'r's Mot. at 1-2.  Petitioner alleges that prison officials obstructed his ability to file his Motion because they did not properly deliver

his mail or provide him access to the materials that he wanted, such as transcripts, discovery, and his Pre-Sentence Report.  *See* Pet'r's Mot. at 1; Pet'r's Reply at 3.  However, Petitioner's claim falls short of demonstrating that governmental actions warrant a tolling period under section 2255(f)(2).  Petitioner never filed a motion requesting transcripts, discovery material, or his Pre-Sentence Report while the statutory period was tolling.  He only filed his Motion for Disclosure (ECF No. 70) on the same day he filed his Motion to Vacate.  Furthermore, he points to no constitutional or statutory right to such materials to assist with a collateral attack of his conviction.[3]  Therefore, Petitioner has not shown that prison officials violated any obligation to provide him with the materials he claims he needed to draft his Motion.  *See* 28 U.S.C. § 2255(f)(2).

Petitioner's argument regarding the management of his mail appears to be partly confused with the appellate process, rather than his attempts at filing a Motion to Vacate, since he refers to his attempts to contact his appellate counsel.  *See* Pet'r's Mot. at 1.  Any treatment of Petitioner's mail by prison officials while he appealed this Court's decision to the Court of Appeals is irrelevant when considering the alleged prison official conduct that impeded upon his ability to file the pending Motion.  Furthermore, Petitioner does not state the mail he was expecting to receive and why failure to receive that mail prevented him from filing his Motion to Vacate.  Therefore, Petitioner provides no compelling reason indicating that the tolling period for the pending Motion should fall under section 2255(f)(2) of Title 28 due to conduct by prison officials.

---

[3]     In *United States v. MacCollom*, 426 U.S. 317, 320 n.1 (1976), the Supreme Court specifically declined to make access to trial transcripts an automatic right for section 2255 plaintiffs.

D.  *The tolling period for Petitioner's Motion does not fall under section 2255(f)(4).*

Petitioner also argues that the beginning date for the tolling period falls under 28 U.S.C. § 2255(f)(4).  *See* Pet'r's Mot. at 2.  Section 2255(f)(4) provides for a tolling period that begins on the "date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  In this case, all facts used by Petitioner in his Motion were already known prior to the final judgment of his appeal.  Petitioner's Motion to Vacate fails to mention the discovery of any new facts that would cause the statute of limitations for his Motion to begin tolling later than May 3, 2010.  Petitioner's Reply clarifies his section 2255(f)(4) claim, but appears to misinterpret the meaning of the statute.  *See* Pet'r's Reply at 5. In his Reply, Petitioner merely reiterates his dissatisfaction with the materials provided by the prison officials and their handling of Petitioner's mail.  *See id.*  Petitioner's Reply does not refer to any previously undiscovered facts that would impact the disposition of his case.  Thus, Petitioner has not mounted a successful claim for a later tolling date under section 2255(f)(4).

E.  *Petitioner's case does not warrant equitable tolling.*

Finally, Petitioner argues that he faced circumstances that would require this Court to equitably toll the statute of limitations to the date on which he filed his Motion.  Pet'r's Mot. at 1.  The Court of Appeals for the Fourth Circuit has stated that equitable tolling is available in "those rare instances where— due to circumstances external to the party's own conduct— it would be unconscionable to enforce the limitation against the party."  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *see also Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002).  In order for equitable tolling to apply, Petitioner must show that he has been pursuing his rights diligently and that extraordinary circumstances stood in his way that prevented timely filing.  *See Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

Principles of equity do not mandate tolling in this case, because Petitioner does not demonstrate the kind of extraordinary circumstances that would require a tolling date later than May 3, 2011.  Petitioner did not face any actual barrier that prevented him from filing his Motion to Vacate.  Petitioner simply chose not to file his Motion until it was too late.  Petitioner has not shown why he could have only filed the pending Motion on June 6, 2011, rather than on May 3, 2011, or earlier.  Since equitable tolling does not apply in this case, Petitioner is time-barred from challenging his sentence in his Motion to Vacate.

In conclusion, section 2255(f) bars Petitioner's Motion to Vacate, because Petitioner did not file his Motion in a timely fashion.  In the following sections, this Court will, nevertheless, address the merits of Petitioner's claims.

## II.  Petitioner's Ineffective Assistance of Counsel Claim

### A.  Standard of Review

Petitioner's collateral claim that his trial counsel and appellate counsel did not render effective assistance in his case has no basis.  In order to establish a claim for ineffective assistance of counsel, Petitioner must prove both elements of the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, Petitioner must show that his counsel's performance was so deficient as to fall below an "objective standard of reasonableness." *Id.* at 688.  In assessing whether counsel's performance was unconstitutionally deficient, courts adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance." *Id.* at 689.  Second, Petitioner must show that his counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." *Id.* at 687. In order to establish this level of prejudice, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Satisfying either of the two parts of the test alone is not

sufficient; rather, Petitioner must meet both prongs of the *Strickland* test in order to be entitled to relief.  *See id.* at 687.

> B. *Petitioner's trial counsel performed reasonably and her conduct did not cause prejudice in Petitioner's case.*

Petitioner alleges that trial counsel performed deficiently for twenty-three reasons.  *See* Pet'r's Supp. Mot. at 30-31.  None of these arguments has any merit.  As stated above, the first prong of *Strickland* states that courts must adopt a "strong presumption" that a counsel's actions fall within the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 688. Almost all of Petitioner's claims merely express dissatisfaction with his trial counsel's representation and handling of his case; however, none of them demonstrate any clearly unreasonable actions taken by counsel.

> 1.  Reasonable Trial Strategy

Seventeen of Petitioner's ineffective assistance of counsel claims[4] can be classified as attacks on trial counsel's strategy during his jury trial.  When assailing a choice that Petitioner's counsel made during his trial, Petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  In deciding whether Petitioner has met this burden, this Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight . . . ." *Id.*

All of the claims listed under this section involve actions taken by trial counsel where she utilized her judgment in how best to proceed with Petitioner's case.  This Court cannot find any egregious issues on the part of trial counsel in how she conducted Petitioner's case.  While

---

[4]      This section addresses claims numbered 2, 3, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, and 23 in Petitioner's Motion.  *See* Pet'r's Supp. Mot. at 30-31.

Petitioner expresses dissatisfaction with some of the decisions that his trial counsel made, he does not point to any particular action that falls outside of the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688.

> 2.   Other Claims

Petitioner makes five claims[5] concerning his trial counsel's performance that are either too general in nature or are not supported by the record.  First, Petitioner's Motion states that his trial counsel "failed to represent [his] interest at trial."  Pet'r's Supp. Mot. at 30.  The test set forth by *Strickland* requires that "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  446 U.S. at 690.  A conclusory and generalized statement about trial counsel's performance at his jury trial does not suffice as a *Strickland* claim.

Second, Petitioner alleges that trial counsel "failed to notify the court of [his] wish to proceed *pro se*."  Pet'r's Supp. Mot. at 30.  In his Motion, Petitioner says he informed his trial counsel that he wished to proceed *pro se* during a prison visit on July 3, 2008, and that trial counsel neglected to communicate this wish with the Court.  *Id.* at 36.  On July 8, 2008, the morning of Petitioner's jury trial, this Court conducted a hearing on Petitioner's motion for self-representation.  Government's Resp., Ex. 1, ECF No. 80-1.  During this hearing, trial counsel informed the Court of Petitioner's request.  *Id.* at 8.  The Court considered trial counsel and Petitioner's arguments, reviewed the case law, and found Petitioner's motion to be improper under the circumstances.  *Id.* at 34-35.  Trial counsel properly notified the Court of his desire to proceed *pro se*.  Thus, Petitioner provides no reason to doubt his counsel provided effective assistance.

---

[5]      This section discusses claims numbered 1, 4, 5, 6, and 18 in Petitioner's Motion.  *See* Pet'r's Supp. Mot. at 30-31.

Third, Petitioner faults trial counsel for failing to "properly inform [him] of the penalties and sentence [he] was facing upon conviction." Pet'r's Supp. Mot. at 30. Petitioner takes issue with trial counsel's belief that he would not face more than a ninety-six month sentence, because he was a category V defendant[6] and career offender status would not apply to his case. *Id.* at 36. Petitioner's claim has no basis in this jurisdiction. The Fourth Circuit has specifically held that ineffective assistance of counsel claims do not apply to situations where trial counsel inaccurately predicts the likely sentence. *See, e.g.*, *United States v. Foster*, 68 F.3d 86, 87-88 (4th Cir. 1995) (rejecting ineffective assistance claim by defendant sentenced as "career offender" who entered guilty plea only upon assurances from counsel to the contrary); and *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (rejecting ineffective assistance claim by defendant sentenced to 360-month term who entered a guilty plea on counsel's assurance that his Sentencing Guideline range was only 78-108 months). Thus, Petitioner cannot make an ineffective assistance of counsel claim on this issue.

Fourth, Petitioner argues that his trial counsel failed to pursue a jury instruction for larceny, under 18 U.S.C. § 2113(b), as a lesser-included offense to bank robbery, under 18 U.S.C. § 2113(a). *See* Pet'r's Supp. Mot. at 30, 35. Petitioner's Motion indicates that he and trial counsel discussed this issue in some detail, with trial counsel believing that this jury instruction would not be appropriate. *See* Pet'r's Supp. Mot. at 35. Trial counsel exhibited sound judgment and reasoning when she informed Petitioner that the larceny provision was not a lesser-included to the bank robbery. In *Carter v. United States*, 530 U.S. 255 (2000), the Supreme Court specifically held that larceny under section 2113(b) of Title 18 was not the lesser

---

[6]     The Federal Sentencing Guidelines, published by the United States Sentencing Commission, sets forth a list of six criminal history categories. A convicted defendant's category partly determines the sentence he or she receives.

included offense of bank robbery under section 2113(a).[7]   Therefore, there was no basis to pursue the jury instruction Petitioner requested.

Fifth, Petitioner claims that trial counsel rendered ineffective assistance because she "failed to go over the Government's evidence with [him]."  Pet'r's Supp. Mot. at 30.  Petitioner briefly discusses two meetings he had with trial counsel while he was in prison, alleging that trial counsel never discussed the Government's case against him during these visits.  *See id* 35-36.  Regardless of what Petitioner and trial counsel discussed during these meetings, this Court gave them ample opportunity to go over the Government's evidence on the morning of the trial.  ECF No. 80-1 at 23.  Thus, Petitioner does not have a claim for lack of review of the case against him.

### 3.   No Showing of Prejudice as to Petitioner's Final Claim

Petitioner's final claim[8] alleges that the Court and the Government "interject[ed] themselves into the jury deliberation process," and that trial counsel should have objected. Pet'r's Supp. Mot. at 30.  Specifically, Petitioner takes issue with a request by the jury members, during deliberations, where they asked to see a portion of the surveillance video from the robbery.  *See* Pet'r's Supp. Mot. at 38.  Petitioner claims that the Government played a longer portion of the video than that which the jury asked to review, and that trial counsel's failure to object to this constituted ineffective assistance of counsel.  *See id.*

Even if Petitioner successfully proved this claim on the first prong of *Strickland*, it fails the second prong.  To satisfy the second prong of *Strickland*, Petitioner must show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  The evidence in this case heavily connected

---

[7]       In *Carter*, Justice Thomas wrote that the bank robbery provision under 2113(a) lacked three of the elements of larceny under 2113(b).  *See* 530 U.S. at 261.  Thus, larceny could not be considered a lesser-included offense to bank robbery.  *See id.* at 274.

[8]       This section discuss claim numbered 9 in Petitioner's Motion.  *See* Pet'r's Supp. Mot. at 30.

Petitioner to the charged crime, and he makes no attempt to show how this alleged occurrence substantially resulted in his conviction.

It is worth nothing here that all of Petitioner's claims, which can be disposed of for failure to meet the first prong of *Strickland*, also fail the second prong. Petitioner has not demonstrated how he suffered from prejudice as a result of any of the twenty-three actions by trial counsel that he disputes. Petitioner has not made any attempt to prove that there exists a reasonable probability that a different outcome would have occurred in his trial if trial counsel had performed differently. *See id.* Thus, Petitioner has not met his burden to prove his claim— in all twenty-three specific instances complained of— under the prejudice prong of *Strickland*.

> C. *Petitioner's appellate counsel performed reasonably and his conduct did not cause prejudice in Petitioner's case.*

Petitioner also contends that his appellate counsel provided ineffective assistance in arguing his appeal before the United States Court of Appeals for the Fourth Circuit. *See* Pet'r's Supp. Mot. at 29, 32-34. Specifically, Petitioner makes ten claims detailing appellate counsel's alleged ineffective assistance. *See id.* at 29. Similar to his ineffective assistance of trial counsel claim, none of Petitioner's arguments allege attorney conduct that fell outside the scope of "reasonable professional assistance" required by the first prong of *Strickland*. 466 U.S. at 689.

> 1. Reasonable Appellate Strategy

Six of Petitioner's claims[9] deal with strategic decisions made by appellate counsel in his argument before the Court of Appeals. As stated above, this Court must undertake a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight . . . ." *Strickland*, 466 U.S. at 689. None of the claims in this section point to any clearly unreasonable actions on the part of appellate counsel. Petitioner's

---

[9] This section discusses claims numbered 1, 2, 5, 7, 9, and 10 in Petitioner's Motion. *See* Pet'r's Supp. Mot. at 29.

Motion states that he had contact with his attorney, went over potential arguments with him for appeal, and that his counsel filed an appeal using two of the arguments they had discussed. *See* Pet'r's Supp. Mot. at 32-33. All of these actions indicate that Petitioner's appellate counsel generally provided Petitioner with reasonable assistance, even if Petitioner does not agree with every step appellate counsel undertook when filing his appeal.

### 2. Lack of Factual or Legal Basis for Claim

Petitioner does not provide a factual or legal basis to support three of his claims[10]. First, Petitioner complains that appellate counsel did not notify this Court about alleged violations of his rights by the Bureau of Prisons. *See* Pet'r's Supp. Mot. at 29. However, Petitioner has failed to point to the specific rights that prison officials allegedly violated. He does not explain the suitable actions appellate counsel should have undertaken, and whether appellate counsel ever knew of these alleged violations. Instead, Petitioner merely offers a conclusory statement with no supporting facts, which cannot be supported as a valid *Strickland* claim. *See* 446 U.S. at 490.

Second, Petitioner argues that appellate counsel failed to send him mail that was certified or notarized, which in turn caused some of the mail to be returned by the Bureau of Prisons. *See* Pet'r's Supp. Mot. at 29. Petitioner does not specify which mail he should have received from appellate counsel, besides his mention of trial transcripts that he never received. *See* Pet'r's Supp. Mot. at 32. As discussed above, Petitioner had no right to trial transcripts in prison, and prison officials had the authority to prevent him from receiving such materials. *United States v. MacCollom*, 426 U.S. 317, 320 n.1 (1976) (declining to give prisoners the right to possess trial transcripts). Petitioner does not detail any other mail that he should have received from appellate counsel; thus, he fails to mount a meritorious *Strickland* claim on this basis.

---

[10] This section discusses claims numbered 3, 6, and 8 in Petitioner's Motion. *See* Pet'r's Supp. Mot. at 29.

Third, Petitioner faults appellate counsel for not notifying him of his right to file a petition for an rehearing *en banc* of the appellate court's decision affirming his conviction.  *See* Pet'r's Supp. Mot. at 29.  However, Petitioner does not set forth the grounds under which appellate counsel had the duty to inform him of his right to petition for reconsideration.  In fact, the Fourth Circuit's judgment in Petitioner's case specifically mentioned that he had right to petition for a rehearing and detailed the necessary procedures.  ECF No. 63-2.  Accordingly, Petitioner has failed to state a *Strickland* claim.

### 3. *Alford* Plea Claim

Finally, Petitioner claims that appellate counsel should have made the argument that Petitioner's second-degree assault charge does not count for career offender status[11] because he submitted an *Alford* plea[12] as to that charge.  *See* Pet'r's Supp. Mot. at 34.  Petitioner cites *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), in support of his proposition that his *Alford* convictions cannot be utilized.  In *Alston*, the Fourth Circuit held that convictions obtained through *Alford* pleas may not be used by courts as violent crime predicates for purposes of the Armed Career Criminal Act,[13] unless the crime is inherently violent or the defendant admitted to facts that demonstrate violence.  *See* 611 F.3d at 227.  Petitioner's appellate counsel did not perform unreasonably when he declined to make this argument, because *Alston* had not yet been

---

[11]     Section 4B1.1 of Chapter 4 of the Federal Sentencing Guidelines recommends a sentence enhancement if a defendant is convicted of a crime of violence or controlled substance offense and has at least two such prior felony convictions.  The Federal Sentencing Guidelines as a whole are not mandatory.  For purposes of sentencing, however, calculating the recommended sentences is mandatory. *See United States v. Booker*, 543 U.S. 200 (2005).

[12]     An *Alford* plea, as explained in *North Carolina v. Alford*, 400 U.S. 25 (1970), is a plea agreement in which a defendant pleads guilty, but still maintains his innocence of the charge.  *See id.* at 37.

[13]     18 U.S.C. § 924(e).  The Armed Career Criminal Act ("ACCA") mandates a fifteen-year prison term for anyone convicted of a violent crime or drug offense who has been convicted of three prior violent crimes or drug offenses.

decided at the time counsel filed Petitioner's appeal.[14]   Under the highly deferential first prong of *Strickland*, "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient."   *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996); *accord Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983).   Petitioner's Motion to Vacate discusses how he and appellate counsel went over this argument, and how appellate counsel ultimately rejected the argument as "not an appellate issue to be considered."   Pet'r's Supp. Mot. at 32.   Appellate counsel made an entirely reasonable decision on this point, and Petitioner's *Strickland* claim fails.

Even if Petitioner succeeded on his *Alford* plea claim, he would have suffered no prejudice.   The second prong of *Strickland* requires petitioner to show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different."   466 U.S. at 694.   In this case, Petitioner's career offender status had no bearing on the length of his prison term.   A jury found Petitioner guilty of bank robbery under section 2113(a) of Title 18, which carries a maximum penalty of twenty years in prison.   The career offender status comes into consideration only under the Federal Sentencing Guidelines, which are not mandatory for this Court to follow.   *See United States v. Booker*, 543 U.S. 200 (2005).   In other words, this Court still could have, and would have, sentenced Petitioner to an eighteen-year period of incarceration.   Therefore, Petitioner did not suffer any prejudice.

In summary, Petitioner's complaints of ineffective assistance of trial and appellate counsel in this case do not succeed.   Petitioner generally expresses his disagreement with some of the actions taken by both trial and appellate counsel, but he fails to demonstrate that their professional judgment fell outside the realm of reasonable professional assistance as discussed

---

[14]       Petitioner's counsel filed the appeal on August 14, 2009.  ECF No. 80-4.  The United States Court of Appeals for the Fourth Circuit affirmed this Court's decision on January 11, 2010.  ECF No. 63. The Court of Appeals decided *Alston* on July 2, 2010.  *See* 611 F.3d 219

by the first prong of *Strickland*.  466 U.S. at 689.  Furthermore, Petitioner does not show that he

suffered any prejudice in this case as a result of their actions.  Consequently, Petitioner's

*Strickland* claims fail.

### III.  Procedural Bar for Petitioner's Remaining Claims

Petitioner raises additional issues that have been already decided unfavorably or that he

failed to raise on appeal.  This Court cannot properly consider any of these claims for the reasons

that follow.

A.  *Petitioner's challenge to his status as a career offender is procedurally barred.*

1.  Litigating an Issue Already Considered on Direct Appeal

Petitioner argues that this Court improperly considered his conviction for second-degree

assault in 2007, and that the decision should be overturned in light of *Alston*.  *See* Pet'r's Supp.

Mot. at 3-9.  Petitioner may not make this claim in the pending Motion, because the Court of

Appeals has already ruled against him on this issue.  *See United States v. Wallace*, No. 09-4227,

360 F. App'x 441 (4th Cir. 2010).  Petitioner's appellate brief asserted that this Court made an

error in finding Petitioner to be a career offender when it used the state's charging documents to

establish that his second-degree assault conviction was a violent crime.  *See* Government's

Resp., Ex. 4, ECF No. 80-4.  The Court of Appeals rejected this argument, stating that "those

documents were properly considered in assessing whether Wallace's assault conviction was a

crime of violence."  *Wallace*, 360 F. App'x at 443.  Since Petitioner has lost on this issue on

appeal, he may not collaterally attack the same issue in the pending Motion to Vacate.  *See*

*United States v. Walker*, 299 F. App'x 273, 276 (4th Cir. 2008) ("Absent a change in the law, a

prisoner cannot relitigate in collateral proceedings an issue rejected on direct appeal."); *United*

*States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not

pointed to any change in the law that warrants our reconsideration of these claims, we agree with

the district court that they cannot relitigate these issues."); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1975) (per curiam) (stating that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered [on direct appeal]").

### 2. Retroactive Application of New Rights

Whenever a new right is created, prisoners may collaterally attack their convictions if the change in law applies retroactively. The principles of retroactive application of new rights to cases on collateral review are well settled. *See United States v. Powell*, 691 F.3d 554, 557 (4th Cir. 2012). While established legal rules generally apply upon collateral review, new rules— those created after final judgment in the original case— do not. *Id.* In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court set forth a "three-step inquiry to determine when new rules of criminal procedure apply retroactively on collateral review." *United States v. Sanders*, 247 F.3d 139, 145-46 (4th Cir. 2001). First, the court "must determine the date on which the defendant's conviction became final." *Id.* at 146-47. Second, the court must decide whether the "new rule" of criminal procedure was decided after judgment became final in the defendant's case. *Id.* Finally, a new rule does not apply unless it falls under one of the two *Teague* exceptions, which are discussed below. *Id.*

Although Petitioner did not address the application of *United States v. Gomez*, 690 F.3d 194 (4th Cir. 2012), as an intervening change in the law that would allow him to dispute his career offender status, he conceivably could have made such an attempt. This Court analyzes this hypothetical argument in order to add greater strength to its denial of Petitioner's Motion. In *Gomez*, the Fourth Circuit decided that, when making determinations about violent crime predicates, courts may only use the "modified categorical approach"[15] for "statutory offenses in

---

[15]     *See Shepard v. United States*, 544 U.S. 13 (2005). *Shepard* holds that, when the essential elements of an offense do not necessarily constitute a crime of violence, courts must look into the

which the statute itself is divisible." 690 F.3d at 200. In other words, courts must only look to the essential elements of a crime in cases where the underlying charge cannot be divided into a part that requires physical force and a part that does not. However, the Court of Appeals decided *Gomez* 2.5 years after it affirmed the conviction in Petitioner's case.[16] Under the general rule set forth by *Teague*, Petitioner cannot make an argument that utilizes the decision unless he can demonstrate that retroactive application should apply.

The Supreme Court has established two exceptions to allow for retroactive application of new rights. First, a new rule that is substantive, rather than procedural, should apply retroactively. *See Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). A substantive rule "alters the range of conduct or the class of persons that the law punishes," whereas a procedural rule concerns "the manner of determining the defendant's culpability." *Id.* *Gomez* meets the criteria of a procedural rule, because its effect relates to "'the manner of determining' the potential punishment for an offense based on the facts disclosed by the judicial record." *Powell*, 691 U.S. at 559 (quoting *Schriro*, 542 U.S. at 353). In other words, *Gomez* represents a "quintessential procedural rule," because it discusses a matter of sentencing. *See id.* at 559; *see also United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (characterizing a district court's erroneous sentence as a misapplication of a "procedural rule"). Therefore, *Gomez* does not fall under the first exception.

Second, some procedural rules may apply retroactively if they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal

---

underlying facts of the case using the "terms of the document, the terms of the plea agreement . . . or to some comparable judicial record of information." *Id.* at 25. This is known as the modified categorical approach.

[16] The Court of Appeals for the Fourth Circuit affirmed this Court's decision and issued a mandate in Petitioner's case on February 2, 2010. ECF No. 64. The Court of Appeals decided *Gomez* on August 10, 2012. *See* 690 F.3d at 194.

proceeding." *Powell*, 691 F.3d. at 558 (quoting *Saffle v. Parks*, 494 U.S. 494, 495 (1990) (internal quotation marks omitted)).  The Supreme Court has made this exception extraordinarily narrow by virtue of its rejection of every argument for this exception that has come before it. *See Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (emphasizing the narrowness of the procedural right exception and detailing a list of cases where the Court rejected arguments for retroactive application).  Only landmark decisions that fundamentally change criminal procedure in the United States would qualify for this exception.  *See Powell*, 691 F.3d at 558.  *Gomez* clearly does not qualify, as it is a Court of Appeals opinion that merely alters the analysis of determining career criminal offender status.  *See Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (holding that new procedural rules apply retroactively only when they "alter our understanding of the bedrock elements essential to the fairness of a proceeding."); *United States v. Morris*, 429 F.3d 65, 71 (4th Cir. 2005) (stating that new rules of criminal procedures must be of "watershed magnitude" for retroactive application).  Since *Gomez* does not fall under either exception for retroactive application of new rights, its decision has no bearing on Petitioner's conviction and sentence.

Unlike *Gomez*, Petitioner does attempt to rely upon the holding of *United States v. Alston*, 611 F.3d 219 (4th Cir. 2010), as a new right that applies retroactively.  As discussed above, *Alston* held that a conviction obtained from an *Alford* plea cannot be used as a violent crime predicate for career offender status, unless the crime is inherently a violent crime or the defendant admits to facts that show violent actions.  *See* 611 F.3d at 227.  In his Motion to Vacate, Petitioner claims that this Court improperly identified him as a career offender when it used a second-degree assault charge to which he made an *Alford* plea.  *See* Pet'r's Supp. Mot. at 7-8.  *Alston*, however, does not retroactively apply to Petitioner's case. The Fourth Circuit

decided *Alston* on July 2, 2010, which was five months after the appellate court mandate affirming Petitioner's conviction.   ECF No. 64.   The rule set forth in *Teague* prevents the retroactive application of a newly created right to a case that has become final, unless one of the two exceptions applies.  *See* 489 U.S. at 305-07.

Alston* does not fall under either of the two previously mentioned exceptions.   Like *Gomez*, *Alston* addressed a question about how a court calculated a defendant's sentence.   Cases that deal with matters of punishment, such as sentencing issues, are "prototypical procedural rules" that do not apply retroactively.  *Schriro*, 542 U.S. at 353.  Thus, *Alston* does not fall under the first exception of the *Teague* rule.   The second exception provides for retroactive application only in cases that "alter *bedrock procedural elements* essential to the fairness of a proceeding." *United States v.* Morris. 329 F.3d 65, 71 (4th Cir. 2005) (emphasis in original), *cert. denied*, 127 S. Ct. 121 (2006).   The Fourth Circuit has interpreted this standard to apply only to cases of a similar level of importance as the case *Gideon v. Wainwright*, 372 U.S. 353 (1963), where the Supreme Court incorporated the Sixth Amendment right to counsel against the states.  *See Powell*, 691 F.3d at 558.   *Alston*, like *Gomez*, is not a case of such importance that it fundamentally changes rules of criminal procedure.   Therefore, the second *Teague* exception does not apply.

In conclusion, Petitioner may not revive his claim that this Court improperly determined his career offender status, because he has already litigated and lost on the issue on direct appeal. While *Gomez* and *Alston* have established new rights in matters related to career offender determination, Petitioner may not rely on these cases because they do not retroactively apply to his conviction.

B. *Petitioner has already litigated and lost on the claim that he should have been allowed to proceed pro se on the morning of his trial.*

Petitioner claims that this Court erred when it denied his motion to represent himself *pro se* in his trial. *See* Pet'r's Supp. Mot. at 14-16. Petitioner litigated and lost on this issue in his appeal to the Court of Appeals. *See United States v. Wallace*, No. 09-4227, 360 F. App'x 441 (4th Cir. 2010). Since Petitioner has not offered any intervening changes in the law that may apply to this claim, he is procedurally barred from collaterally attacking his conviction for this reason in the pending Motion. *See Walker*, 299 F. App'x at 276; *Roane*, 378 F.3d at 396 n.7; *Boeckenhaupt*, 537 F.2d at 1183.

C. *Petitioner's remaining claims are procedurally barred because he did not raise them on direct appeal.*

1. Constitutional Claims

Petitioner makes six additional claims involving constitutional violations to support his Motion to Vacate. First, Petitioner states that this Court abused its discretion when it allowed the Government to show the jury a lengthier part of the bank surveillance video than that which the parties agreed to play. *See* Pet'r's Supp. Mot. at 43-44. Second, Petitioner asserts that the Government altered the video in order to falsely portray him as being aggressive and threatening. *See id.* at 44. Third, Petitioner takes issue with how this Court addressed his counsel during his trial. *See id.* at 42. Fourth, Petitioner believes that this Court and the government acted in concert in order to convince the jury to convict him. *See* Pet'r's Mot. at 42-43. Fifth, Petitioner claims that this Court should have suppressed certain statements he made when officers discovered him shortly after the robbery. *See id.* at 20-24. Finally, Petitioner argues that the police used an impermissibly suggestive line-up to coax Neighoff into identifying him as the bank robber. *See id.* at 24-26.

These claims may not be pursued in a Motion to Vacate, because Petitioner failed to raise them in his appeal of his conviction.  Failure to raise constitutional issues on direct appeal generally renders them procedurally defaulted on habeas review, unless a petitioner can show either "cause and prejudice" or a "miscarriage of justice."  *United States v. Mikulajunas*, 186 F.3d 490, 493 (4th Cir. 1999).  Neither of these exceptions applies to Petitioner's claims.

First, a constitutional claim that could have been raised on direct appeal, but was not, may be raised in a section 2255 motion if Petitioner can show "cause" and "actual prejudice."  *Id.* at 492-93.  In order to show "cause," Petitioner must demonstrate that he did not raise the issue on direct appeal because of some factor "external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel."  *Id.* at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Although Petitioner does not explicitly show cause for each claim in his Motion, his arguments focus on how trial counsel "failed to protect and preserve [his] appellate issues."  *See* Pet'r's Supp. Mot. at 31.  To prove cause for ineffective assistance of counsel, Petitioner must show that his "attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result."  *Mikulajunas*, 186 F.3d at 493 (citing *Murray*, 477 U.S. at 488; *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  As discussed above, counsel performed reasonably at Petitioner's trial when she did not object to the issues Petitioner now raises, and he suffered no prejudice as a result of her actions.  Therefore, Petitioner has not shown cause for his procedural default on the basis of ineffective assistance of counsel.

Second, constitutional claims that have been procedurally defaulted may be raised in a motion to vacate if Petitioner can show that failure to evaluate them would result in a "miscarriage of justice."  *Mikulajnuas*, 186 F.3d at 493.  Specifically, Petitioner must show "actual innocence by clear and convincing evidence."  *Id.*  Petitioner makes no such showing in

24

his Motion to Vacate.  The evidence in this case overwhelmingly implicated Petitioner as the perpetrator of the bank robbery, such as Neighoff's identification of Petitioner as the robber who threatened her, confirmation that the dye on Petitioner's hands matched the dye from the bank, and statements made by Petitioner indicating that he committed the crime.  In his Motion, Petitioner does not demonstrate that he is actually innocent of the crime, and the record strongly supports his conviction.  Petitioner failed to assert these constitutional claims on direct appeal, and is procedurally defaulted from mounting a collateral attack on them in the pending Motion.

2.   Nonconstitutional Claim

Petitioner's final claim in his Motion to Vacate argues that this Court improperly instructed the jury on the definition of bank robbery under section 2113(a) of Title 18.  *See* Pet'r's Supp. Mot at 44-45.  Specifically, he claims that this Court instructed the jury by saying that the statute required a defendant charged with bank robbery to have acted with "force or violence, threat, or *by acting in an intimidating manner*."  *Id.* at 45 (emphasis added).  Petitioner contends that this jury instruction substantially differed from the wording of the actual statute, which states that a defendant must act with "force, violence, or *by intimidation* . . . ."  18 U.S.C. § 2113(a) (emphasis added).

Petitioner failed to make this claim on direct appeal; therefore, he is procedurally defaulted from making it in the pending Motion.  In order to surmount procedural default on a nonconstitutional claim, Petitioner must show that the error is "a fundamental defect which inherently resulted in a complete miscarriage of justice," or is "inconsistent with the rudimentary demands of fair procedure."  *Mikalajunas*, 186 F.3d at 495-95 (citations omitted).  Petitioner must also be able to demonstrate "cause and prejudice" or "actual innocence."  *Id.* at 492-93; *United States v. Pettiford*, 606 F.3d 156, 166 (4th Cir. 2010).

Petitioner's argument does not meet the high burden to overcome procedural default.  As discussed above, he has not shown his innocence in this case by clear and convincing evidence. *Mikulajunas*, 186 F.3d at 493.  Petitioner also does not show cause.  The Fourth Circuit has held that on review of jury instructions for error, a court should only determine whether "the instruction fairly states the controlling law."  *United States v. Cobb*, 905 F.2d 784, 789 (1990) (citation omitted).  The difference between the alleged jury instruction and the text of the statute does not amount to the "fundamental defect" that Petitioner must demonstrate, because the language is similar enough that it fairly stated the law.  *Mikulajunas*, 186 F.3d at 495-96.

In conclusion, Petitioner is procedurally barred from making all of his remaining claims, because he did not raise them on direct appeal.  Instead, Petitioner asserts a host of issues in his pending Motion in the form of an appeal.  However, collateral review in a section 2255 motion is not a substitute for appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982) (stating that "a collateral challenge may not do service for an appeal").  This Court need not delve into each of these arguments, because Petitioner may not properly make any of these claims at this stage. *See id.*

## IV.  <u>Remaining Motions</u>

In addition to his Motion to Vacate, Petitioner has four other pending motions.  This Court addresses each of them in turn.

A.  *Motion for Disclosure (ECF No. 70)*

On June 6, 2011, the same day Petitioner submitted his Motion to Vacate, Petitioner filed a Motion for Disclosure of trial exhibits, jury instructions, and witness lists to assist him with his "appellate briefs."  (ECF No. 70.)  Petitioner provides no specific reason as to why he requires these materials.  He has already filed his appeal and lost; therefore, he may not file another

appeal of his conviction.  Since he submitted this Motion for Disclosure with his Motion to Vacate, it is clear that he did not need this information for his habeas petition.  Without any legitimate reason to possess such documents, Petitioner's Motion for Disclosure is DENIED.

B.  *Motion to Instruct the Court Clerk (ECF No. 75)*

On July 27, 2011, Petitioner made a Motion to Instruct the Court Clerk requesting a copy of the Electronic Case Filing docket for his case.  (ECF No. 75.)  Petitioner states his need for the case docket so that he can review filing dates and know when responses are due.  He also requests that the Clerk of this Court send him mail in a specified manner to comply with prison policy.  Since Petitioner had already vindicated his right to file a motion under section 2255, this Court finds no basis for Petitioner's requests.  Therefore, his Motion to Instruct the Court Clerk is DENIED.

C.  *Motion Notifying the Court (ECF No. 81)*

Petitioner filed a Motion Notifying the Court of Government's Failure to Answer his Motion to Vacate in a timely fashion.  (ECF No. 81.)  Following Petitioner's filing of his Motion to Vacate on June 6, 2011, this Court ordered that the Government respond by August 12, 2011. ECF No. 71.  The Government filed for an extension of time on August 9, 2011.  (ECF No. 76.) This Court granted the motion and extended the deadline for a response to October 11, 2011. (ECF No. 77.)  The Government complied with this Court's order and submitted a response by the extended deadline.  (ECF No. 80.)  Petitioner then filed his Motion Notifying the Court on October 21, 2011, ten days after the Government filed its Response.  Since the Government already fulfilled this Court's order, the Court need not consider this motion.  Accordingly, Petitioner's Motion Notifying the Court is MOOT.

D.  *Motion for Extension (ECF No. 82)*

On October 26, 2011, Petitioner filed a Motion for Extension of time to file a reply to the Government's Response.  *See* ECF No. 82.  In his Motion for Extension, Petitioner requests a copy of the Response.  As evidenced by Petitioner's references to the Response in his Reply, it is clear that Petitioner received the document and rebutted the Government's arguments.  *See* ECF No. 84.  Additionally, Petitioner filed his Reply on November 22, 2011, ECF No. 84, which was twenty-five days after a reply was due.  *See* ECF No. 80.  In light of this Court's consideration of Petitioner's Reply, Petitioner's pending Motion for Extension is MOOT.

CONCLUSION

This Court finds that Petitioner failed to file his Motion to Vacate in a timely fashion. Furthermore, this Court determines that Petitioner's *Strickland* claim fails, because he received reasonable assistance from counsel and suffered no prejudice.  Finally, Petitioner's remaining claims have no merit and are procedurally barred.  For the reasons stated above, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is DENIED; his Motion for Disclosure is DENIED; his Motion to Instruct the Court Clerk is DENIED; his Motion Notifying the Court is MOOT; and his Motion for Extension is MOOT.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2000).  A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable.  *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).  In this case, reasonable jurists would not find Petitioner's claims debatable;

therefore, a certificate of appealability is DENIED.

A separate Order follows.

Dated:  February 8, 2013

_____/s/_____
Richard D. Bennett
United States District Judge